UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Megan Gilstrap, | Civil Action No. |
| *On behalf of herself and those similarly situated*, | |
| Plaintiff, | |
| v. | |
| SUSHINATI LLC; House of Korea, LLC; The Korea House, LLC; 3501Seoul LLC; Shelly Choi; Mike Choi; and John Doe 1–10; Doe Corporation 1–10; | Jury Demand Endorsed Herein |
| Defendants. | |

CLASS AND COLLECTIVE ACTION COMPLAINT

1.    Megan Gilstrap, on behalf of herself and all similarly situated employees, brings this action against Defendants SUSHINATI LLC; House of Korea, LLC; The Korea House, LLC; 3501Seoul LLC; Shelly Choi; Mike Choi; John Doe 1–10; and Doe Corporation 1–10 (collectively "Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly situated employees with minimum wages as required by the Fair Labor Standards Act ("FLSA"), the Ohio Constitution, Article II, Section 34a ("Section 34a"), O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), O.R.C. § 2307.60, and damages under the theory of unjust enrichment.

2.      Defendants operate at least three restaurants in the Cincinnati area (collectively, the "Restaurants").

3.      Defendants operate a restaurant at 7466 Beechmont Ave., Cincinnati, OH 45255.

4.      Defendants operate a restaurant at 3501 Erie Ave., Cincinnati, OH 45208.

5.      Defendants operate a restaurant at 11371 Montgomery Rd., Cincinnati, OH 45249.

6.      Plaintiff Megan Gilstrap worked for Defendants as a server and host at each of Defendants' Restaurants in the Cincinnati, Ohio area.

7.      Plaintiff has worked at least one shift at each of Defendants' three restaurants.

8.      Plaintiff and her fellow Tipped Employees at the Defendants' Restaurants have been subject to the same policies and practices that violate the FLSA and Ohio law.

9.      Plaintiff brings this action on behalf of herself and similarly situated current and former Tipped Employees former servers and hosts employed by Defendants at the Defendants' Restaurants ("Tipped Employees") who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b), to remedy violations of the FLSA by Defendants.

## JURISDICTION AND VENUE

10.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff' FLSA claims.

11.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Ohio law claims.

12.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

**PARTIES**

**Plaintiff**

**Megan Gilstrap**

13.     Plaintiff is an individual residing in Cincinnati, Ohio.

14.     Plaintiff has given written consent to join this action.

15.     At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of the FLSA and Ohio law.

**Defendants**

16.     Defendants have employed Plaintiff and Tipped Employees at all relevant times.

17.     Each of the Defendants had control over the working conditions of Plaintiff and Tipped Employees.

18.     Defendants are part of a single integrated enterprise.

19.     At all times relevant, Defendants' Restaurants shared common management and were centrally controlled and/or owned by Shelly and Mike Choi. SUSHINATI LLC is owned by Shelly Choi and Mike Choi. *See* Liz Engel, *New SushiNati in Anderson Township offers creative sushi dishes with a local flair -- and a full bar*, WCPO (April 11, 2018) https://www.wcpo.com/news/insider/new-sushinati-in-anderson-twp-offers-creative-sushi-dishes-with-a-local-flare-and-a-full-bar ("A new restaurant has debuted in Anderson Towne Center, and it's the third overall concept for husband-and-wife team Mike and Shelly Choi.… Choi said she will spend most of her time on site to help get the new restaurant off the ground but said she has no plans of slowing down.").

3

20.     At all times relevant, Defendants maintained control over labor relations at Defendants' Restaurants.

21.     During all relevant times, Defendants permitted employees to transfer or be shared by and between Defendants' Restaurants without retraining.

22.     Defendants share or co-determine those matters governing the essential terms and conditions of employment for Plaintiff and Tipped Employees at the Defendants' Restaurants.

23.     Defendants suffer or permit Plaintiff and other Tipped Employees to work.

24.     Defendants have direct or indirect control of the terms and conditions of Plaintiffs' work and the work of Tipped Employees.

25.     During all relevant times, Defendants exercised operational control over Defendants' Restaurants, including, but not limited to, control over recruiting and training, compensation, job duties, reimbursements, design and layout of the restaurants, sales and marketing programs, public relations programs, promotional services, appearance and conduct standards, inventory, and inventory controls.

**SUSHINATI LLC**

26.     Defendant SUSHINATI LLC is a domestic limited liability company, with its headquarters in Cincinnati, Ohio.

27.     SUSHINATI LLC is owned by Shelly Choi and Mike Choi.

28.     SUSHINATI LLC is an "employer" of Plaintiff and Tipped Employees as that term is defined by the FLSA and Ohio law.

4

29.     SUSHINATI LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all servers at the Defendants' Restaurants, including policies, practices, and procedures relating to payment of minimum wages.

30.     SUSHINATI LLC maintained control, oversight, and direction over Plaintiff and Tipped Employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other practices.

31.     SUSHINATI LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

32.     SUSHINATI LLC's gross revenue exceeds $500,000 per year.

**House of Korea, LLC**

33.     Defendant House of Korea, LLC is a domestic limited liability company with its headquarters in Cincinnati, Ohio.

34.     House of Korea, LLC is owned by Shelly Choi and Mike Choi.

35.     House of Korea, LLC is an "employer" of Plaintiff and Tipped Employees as that term is defined by the FLSA and Ohio law.

36.     House of Korea, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all servers at the Defendants' Restaurants, including policies, practices, and procedures relating to payment of minimum wages.

37.     House of Korea, LLC maintained control, oversight, and direction over Plaintiff and Tipped Employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other practices.

38.     House of Korea, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

39.     House of Korea, LLC's gross revenue exceeds $500,000 per year.

**The Korea House, LLC**

40.     Defendant The Korea House, LLC is a domestic limited liability company with its headquarters in Cincinnati, Ohio.

41.     The Korea House, LLC is owned by Shelly Choi and Mike Choi.

42.     The Korea House, LLC is an "employer" of Plaintiff and Tipped Employees as that term is defined by the FLSA and Ohio law.

43.     The Korea House, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all servers at the Defendants' Restaurants, including policies, practices, and procedures relating to payment of minimum wages.

44.     The Korea House, LLC maintained control, oversight, and direction over Plaintiff and Tipped Employees, including, but not limited to, timekeeping, payroll, expense reimbursements, deductions, tips, and other practices.

45.     The Korea House, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

46.     The Korea House, LLC's gross revenue exceeds $500,000 per year.

**3501Seoul LLC**

47.     Defendant 3501Seoul LLC is a domestic limited liability company with its headquarters in Cincinnati, Ohio.

48.     3501Seoul LLC is owned by Shelly Choi and Mike Choi.

6

49.     3501Seoul LLC is an "employer" of Plaintiff and Tipped Employees as that term is defined by the FLSA and Ohio law.

50.     3501Seoul LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all servers at the Defendants' Restaurants, including policies, practices, and procedures relating to payment of minimum wages.

51.     3501Seoul LLC maintained control, oversight, and direction over Plaintiff and Tipped Employees, including, but not limited to, timekeeping, payroll, expense reimbursements, deductions, tips, and other practices.

52.     3501Seoul LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

53.     3501Seoul LLC's gross revenue exceeds $500,000 per year.

**Shelly Choi**

54.     Defendant Shelly Choi is an owner and operator of all of the Defendant entities.

55.     Shelly Choi lives in Cincinnati, Ohio.

56.     Shelly Choi is a hands-on owner who oversees operations in all four of her restaurants.

57.     Upon information and belief, Shelly Choi operates and controls the Defendant corporations from their headquarters at 1828 Stonehouse Lane, Cincinnati, OH 45255.

58.     At all relevant times, Shelly Choi has been an "employer" of Plaintiff and Tipped Employees as that term is defined by the FLSA and Ohio law.

59.     At all relevant times, Shelly Choi has been actively involved in managing the operations of the Defendants' Restaurants.

7

60.     At all relevant times, Shelly Choi has had control over Defendants' pay policies.

61.     At all relevant times, Shelly Choi has had power over personnel and payroll decisions at the Defendants' Restaurants.

62.     At all relevant times, Shelly Choi has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

63.     At all times relevant, Shelly Choi has had the power to transfer the assets and liabilities of each of the named corporate defendants.

64.     At all relevant times, Shelly Choi has had the power to declare bankruptcy on behalf of each of the named corporate defendants.

65.     At all relevant times, Shelly Choi has had the power to enter into contracts on behalf of each of the named corporate defendants.

66.     At all relevant times, Shelly Choi has had the power to close, shut down, and/or sell each of the named corporate defendants.

67.     The Defendants' Restaurants function for Shelly Choi' profit.

68.     Shelly Choi has influence over how the Defendants' Restaurants can be run more profitably.

69.     Shelly Choi would call Plaintiff while she was working and would ask Plaintiff to report on the work of other servers and hostesses to make sure that they were completing their job duties.

70.     Shelly Choi would require Plaintiff to relay messages from her to other employees.

71.     Shelly Choi directed Plaintiff to interface with Defendants' point-of-sale system and perform other miscellaneous at Defendant's Restaurants.

8

**Mike Choi**

72.    Upon information and belief, "Mike" Choi's legal name is Kwon Choi.

73.    Upon information and belief, Defendant Mike Choi is an owner and operator of all of the Defendant entities.

74.    Upon information and belief, Mike Choi lives in Cincinnati, Ohio.

75.    Upon information and belief, Mike Choi operates and controls the Defendant corporations from their headquarters at 1828 Stonehouse Lane, Cincinnati, OH 45255.

76.    Upon information and belief, at all relevant times, Mike Choi has been an "employer" of Plaintiff and Tipped Employees as that term is defined by the FLSA and Ohio law.

77.    Mike Choi has worked alongside his wife in operating the Defendants' Restaurants.

78.    Upon information and belief, at all relevant times, Mike Choi has been actively involved in managing the operations of the Defendants' Restaurants.

79.    Upon information and belief, at all relevant times, Mike Choi has had control over Defendants' pay policies.

80.    Upon information and belief, at all relevant times, Mike Choi has had power over personnel and payroll decisions at the Defendants' Restaurants.

81.    Upon information and belief, Mike Choi has been involved in the decision to hire, fire, and/or discipline employees who worked at Defendants' Restaurants.

82.    Upon information and belief, at all relevant times, Mike Choi has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

83.    Upon information and belief, at all relevant times, Mike Choi has had the power to transfer the assets and liabilities of each of the named corporate defendants.

84. Upon information and belief, at all relevant times, Mike Choi has had the power to declare bankruptcy on behalf of each of the named corporate defendants.

85. Upon information and belief, at all relevant times, Mike Choi has had the power to enter into contracts on behalf of each of the named corporate defendants.

86. Upon information and belief, at all relevant times, Mike Choi has had the power to close, shut down, and/or sell each of the named corporate defendants.

87. Upon information and belief, the Defendants' Restaurants function for Mike Choi's profit.

88. Upon information and belief, Mike Choi has influence over how the Defendants' Restaurants can be run more profitably.

**Doe Corporations 1–10**

89. Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies in whole or in part that also qualify as "employers" of Plaintiff and the other employees at Defendants' Restaurants, as that term is defined by the FLSA and Ohio law.

90. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1–10**

91. Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the other employees at Defendants' Restaurant, as that term is defined by the FLSA and Ohio law.

10

92.     Upon information and belief, Shelly Choi has entered into co-owner relationships with business partners, and those individuals might also qualify as "employers" of Plaintiff and the other employees at Defendants' Restaurant as the term is defined by the FLSA and Ohio law.

93.     Upon information and belief, Mike Choi has entered into co-owner relationships with business partners, and those individuals might also qualify as "employers" of Plaintiff and the other employees at Defendants' Restaurant as the term is defined by the FLSA and Ohio law.

94.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## FACTS

## CLASS WIDE FACTUAL ALLEGATIONS

95.     During all relevant times, Defendants have operated the Defendants' Restaurants.

96.     Plaintiff and the Tipped Employees that she seeks to represent are current and former servers and hosts employed by Defendants at the Defendants' Restaurants.

97.     Defendants paid servers Ohio minimum wage minus a tip credit.

98.     Upon information and belief Defendants paid hosts an hourly wage rate greater than Ohio minimum wage.

99.     At the end of each shift, Defendants paid employees in cash for any credit card tips that they received during their shift.

100.    Until approximately October 2020, Defendants required employees to pay an amount equivalent to 5% of their sales made during each shift to Defendants in cash at the end of each shift.

101. From approximately October 2020 to approximately February of 2022, Defendants required employees to pay them an amount equivalent to 3% of their sales made during each shift to Defendants in cash at the end of each shift.

102. Defendants set the percentage rates that employees were required to pay to Defendants after each shift.

103. Employees paid the percentage rates using the cash from tips they had received during that shift.

104. Upon information and belief, Defendants used the money collected from employees after each shift to pay for housing for Defendants' kitchen staff.

105. The kitchen staff were employees of Defendants.

106. Defendants required Tipped Employees to contribute a portion of their tips to the company.

107. Defendants used Tipped Employees' tip money to cover various expenses including, but not limited to paying the wages of kitchen staff and paying for housing for certain employees.

108. Defendants maintained a "tip jar" at the 7466 Beechmont Ave. Location , but any "tips" from that tip jar were collected by the company and retained by Defendants.

109.

110. Defendants' kitchen staff were not customarily or regularly engaged in customer service, and therefore were not permitted to share in the tip pool.

111. Defendants were not permitted to require servers to pay for costs associated with providing wages or housing to Defendant' kitchen staff, which benefited Defendants.

112.    In approximately February 2022, the employees refused to continue paying percentages of their sales made to Defendants and demanded the policy be ended.

113.    After approximately February 2022, Defendants stopped requiring servers and hosts to pay a percentage of their sales made at the end of each shift.

114.    Until approximately February 2022, Defendants retained some or all of their employees' tips during their shifts.

115.    Until approximately February 2022, Defendants distributed some or all of their employees' tips to non-tipped employees, and/or employees not permitted to participate in a tip pool.

116.    Through their employment, Defendants required employees to purchase any needed uniform shirts and/or aprons from Defendants.

117.    Upon information and belief, Defendants charged employees $12 for each uniform shirt.

118.    Upon information and belief, Defendants charged employees $10 for each apron.

119.    Until at least February 2022, Defendants failed to properly inform employees earning a tipped wage rate of the requirements for taking a tip credit under the FLSA.

120.    Defendants failed to inform employees earning a tipped wage rate of the amount of the hourly wage that is to be paid to them by Defendants and/or the amount of tip credit that Defendants would take from the employees.

121.    Defendants failed to inform employees earning a tipped wage rate that all tips received by them must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly received tips.

13

122.    Defendants failed to inform employees earning a tipped wage rate that the tip credit shall not apply to any employee who has not been informed of these requirements of 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59.

## PLAINTIFF'S INDIVIDUAL FACTUAL ALLEGATIONS

123.    Consistent with their policies, patterns, and practices as described herein, Defendants harmed Plaintiff, individually, as follows:

124.    Plaintiff Megan Gilstrap has worked shifts as a server and/or hostess at all three of the Defendants' Restaurants between approximately May 2020 to April 2022.

125.    Plaintiff typically worked 24 hours per week for Defendants.

126.    In a typical week, Plaintiff typically worked three shifts as a server and one shift as a hostess.

127.    As a server, Plaintiff's primary job duties included waiting on customers, taking orders, putting customer orders in the store computer, bringing food from the kitchen, preparing alcoholic drinks for customers, and cleaning tables.

128.    While working as a server, Plaintiff earned Ohio minimum wage, minus a tip credit.

129.    While working as a server, Plaintiff regularly received tips.

130.    As a hostess, Plaintiff's primary job duties included greeting people, sitting people, receiving customers' to-go orders, finalizing customers' to-go orders, and cleaning the restaurant.

131.    While working as a host, Plaintiff earned $13 per hour.

132.    While working as a host, Plaintiff regularly received tips.

133.    While Plaintiff worked for Defendants, Plaintiff was required to purchase multiple uniform shirts and at least one apron.

14

## Collective Action Allegations

134.    Plaintiff brings this action on behalf of herself and all similarly situated current and former Tipped Employees employed at the Defendants' Restaurants (the "FLSA Collective").

135.    At all relevant times, Plaintiff and all members the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully retaining the tips earned by Plaintiff and the FLSA Collective. Plaintiff' claims are essentially the same as those of the FLSA Collective.

136.    Additionally, Plaintiff and members of the FLSA Collective who received a tipped wage rate have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully failing to meet the requirements for a tip credit as required by the FLSA and making impermissible deductions from their wages. Plaintiff' claims are essentially the same as those of the FLSA Collective.

137.    Defendants' unlawful conduct is pursuant to a corporate policy or practice of minimizing labor costs by failing to properly pay Plaintiff and the FLSA Collective.

138.    Defendants are aware or should have been aware that the conduct described herein is prohibited by federal law.

139.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

140.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

141.    The FLSA Collective members are readily identifiable and ascertainable.

142. For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

143. In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

### CLASS ACTION ALLEGATIONS

144. Plaintiff brings the Second, Third, and Fourth Counts under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former Tipped Employees employed by Defendants between 3 years before the date of filing this complaint and the date of final judgment in this matter ("Rule 23 Wage Subclass").

145. Plaintiff brings the Fifth Count under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former Tipped Employees employed by Defendants between 6 years before the date of filing this complaint and the date of final judgment in this matter ("Rule 23 Unjust Enrichment Subclass").

146. Together, the Rule 23 Wage Subclass, and the Rule 23 Unjust Enrichment Subclass constitute the "Rule 23 Class."

147. Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

148.    The number and identity of the Rule 23 Class members are ascertainable from Defendants' records. The hours assigned and worked, the positions held, and the rates of pay for each Rule 23 Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this action, their names, addresses, email addresses, and phone numbers are readily available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

149.    The Rule 23 Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

150.    There are more than 40 Rule 23 Class members.

151.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

152.    Plaintiff and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of requiring Plaintiff and the Rule 23 class to participate in an invalid tip pool, failing to properly take a tip credit from their wages, and failing to pay minimum wage.

153.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Section 34a, O.R.C. § 4113.15, and the doctrine of unjust enrichment.

154.    Plaintiff and the Rule 23 Class members have all been injured in that they have been subjected to Defendants' common policies, practices, and patterns of conduct. Defendants'

policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

155.     Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

156.     By seeking to represent the interests of the Rule 23 Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

157.     Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

158.     Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

159.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The

adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in significant saving of these costs. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

160.    Upon information and belief, Defendants and other employers throughout the state violate Section 34a, and O.R.C. § 4113.15. Employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

161.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

162.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

> a.    Whether Defendants required Plaintiff and the Rule 23 Class members to participate in a tip pool with untipped employees;

b.      Whether Defendants properly claimed a tip credit from the wages of Plaintiff and the Rule 23 Class;

c.      Whether Defendants failed to pay Plaintiff and the Rule 23 Class in a timely manner as described by O.R.C. § 4113.15;

d.      Whether Defendants' policy of failing to pay Plaintiff and the Rule 23 Class was instituted willfully or with reckless disregard of the law;

e.      The nature and extent of class-wide injury and the measure of damages for those injuries; and

f.      Whether Defendants were unjustly enriched at Plaintiff and the Rule 23 Class's expense.

## CAUSES OF ACTION

### Count 1
### Failure to Pay Minimum Wages – Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

163.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

164.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

165.    Plaintiff and the FLSA Collective were not given proper notice of the tip provisions of the FLSA.

166.    Plaintiff and the FLSA Collective were denied proper minimum wage because they were required to share tips with parties and individuals who are not permitted to be included in a valid tip pool, including Defendants themselves and Defendants' kitchen staff.

167.    Plaintiff and the FLSA Collective were denied proper minimum wage because Defendants retained their tips.

168.     Plaintiff and the FLSA Collective were denied proper minimum wage because they were required to pay for uniforms and other expenses for the benefit of Defendants.

169.     As a result of Defendants' policies and practices, they were not permitted to take a tip credit from the wages of Plaintiff and members of the FLSA Collective.

170.     By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

171.     Plaintiff and members of the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

172.      Plaintiff and members of the FLSA Collective have been damaged by Defendants' retention of their tips in violation of the law.

173.     As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, withheld tips, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a**
**(On Behalf of Plaintiff and the Rule 23 Wage Subclass)**

174.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

175.     Plaintiff and the Rule 23 Class are non-exempt employees.

176.     During all or part of the relevant time period, Defendants have failed to properly claim a tip credit from the wages of Plaintiff and the Rule 23 Class because they have required Plaintiff and the Rule 23 Class to share tips with non-tipped workers or with the restaurant itself.

177.     By requiring Plaintiff and the Rule 23 Class to pay for uniform shirts and aprons, Defendants have violated Plaintiff and the Rule 23 Class's minimum wage rights.

178.     By retaining the tips received by Plaintiff and the Rule 23 Class for their own purposes, Defendants have violated Plaintiff and the Rule 23 Class's minimum wage rights.

179.     By not paying Plaintiff and the Rule 23 Class at least minimum wage for each hour worked, Defendants have violated the Ohio Constitution, Article II, § 34a.

180.     As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, an additional two times unpaid wages in damages under Section 34a, costs, and attorneys' fees.

**Count 3**
**Untimely Payment of Wages – O.R.C. § 4113.15**
**(On Behalf of Plaintiff and the Rule 23 Wage Subclass)**

181.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

182.     During all relevant times, Defendants were entities covered by O.R.C. § 4113.15, and Plaintiff and the Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

183.     O.R.C. § 4113.15(A) requires that Defendants pay Plaintiff and the Rule 23 Class all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

184.     Plaintiff and the Rule 23 Class's unpaid wages have remained unpaid for more than thirty days beyond their regularly scheduled payday.

22

185.    In violating Ohio law, Defendants acted willfully, without a good faith basis and with reckless disregard to Ohio law.

186.    As a result of Defendants' willful violation, Plaintiff and the Rule 23 Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**Count 4**
**Damages Pursuant to O.R.C. § 2307.60**
**(On Behalf of Plaintiff and the Rule 23 Wage Subclass)**

187.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

188.    The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

189.    By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiff and the Rule 23 Class have been injured as a result.

190.    O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

191.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the Rule 23 Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**Count 5**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Rule 23 Unjust Enrichment Subclass)**

192.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

193.    Plaintiff and the Rule 23 Class have conferred a benefit upon Defendants, payments of and amount between 3% and 5% of their sales made in each shift.

23

194. Defendants misappropriated Plaintiff's and the Rule 23 Class's tips.

195. Defendants knew that Plaintiff and the Rule 23 Class conferred that benefit on Defendants.

196. As described above, Defendants received benefits as a result of requiring Plaintiff and the Rule 23 Class to pay between 3% and 5% of their sales to Defendants after each shift.

197. The benefits include, but are not limited to, paying the housing costs for Defendants' kitchen staff.

198. Defendants did not compensate Plaintiff and the Rule 23 Class for these benefits.

199. Accordingly, Defendants' retention of these benefits under these circumstances would be unjust.

200. As a result of Defendants having been unjustly enriched, Plaintiff and the Rule 23 Class are entitled to compensation for the value of the benefit Plaintiff and the Rule 23 Class conferred on Defendants.

**WHEREFORE**, Plaintiff Megan Gilstrap prays for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B. Unpaid minimum wages and an equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C. A declaratory judgment that the practices complained of herein are unlawful under the FLSA.

24

D.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

E.      Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

F.      A declaratory judgment that the practices complained of herein are unlawful under Section 34a.

G.      An award of unpaid minimum wages due under Section 34a.

H.      An award of damages under Section 34a, based on Defendants' failure to pay minimum wages pursuant to Section 34a, calculated as an additional two times of back wages.

I.      A declaratory judgment that the practices complained of herein are unlawful under O.R.C. § 4113.15.

J.      Liquidated damages under O.R.C. § 4113.15.

K.      A declaratory judgment that the practices complained of herein are unlawful under O.R.C. § 2307.60.

L.      Compensatory and punitive damages under O.R.C. § 2307.60.

M.      An award of the value of the benefits for which Defendants were unjustly enriched.

N.      An award of prejudgment and post-judgment interest.

O.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

P.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ *Riley Kane*

25

Andrew R. Biller (Ohio Bar No. 0081452)
Andrew P. Kimble (Ohio Bar No. 0093172)
Riley E. Kane (Ohio Bar No. 0100141)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*abiller@billerkimble.com*
*rkane@billerkimble.com*

www.billerkimble.com

Matthew S. Okiishi (Ohio Bar. No. 0096706)
FINNEY LAW FIRM LLC
4270 Ivy Pointe Blvd., Ste 225
Cincinnati, Ohio 45245
(513) 943-6659
Fax: (513) 943-6669
matt@finneylawfirm.com

*Counsel for Plaintiff*

## Jury Demand

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.


/s/ *Riley Kane*
Riley E. Kane