In the United States District Court
for the Southern District of Ohio
Western Division at Cincinnati

| | |
|---|---|
| Megan Gilstrap, *On behalf of herself and those similarly situated*, Plaintiff, v. SUSHINATI LLC, *et al.*; Defendants. | Case No. 1:22-cv-434 Judge Douglas R. Cole Chief Magistrate Judge Karen L. Litkovitz |

Plaintiff's Unopposed Motion for Settlement Approval

Plaintiff asks the Court to grant approval of the parties' Settlement Agreement, attached as Exhibit 1, order the parties to carry out the terms of the Settlement Agreement, and dismiss the case with prejudice. The Settlement Agreement resolves the opt-in plaintiffs' claims for unpaid wages under the Fair Labor Standards Act and Ohio wage and hour law.

Because this settlement covers only the opt-in plaintiffs, approval may be done without a formal hearing.

Respectfully submitted,

/s/ *Andrew Biller*
Andrew R. Biller (Ohio Bar No. 0081452)
Andrew P. Kimble (Ohio Bar No. 0093172)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620

Matthew S. Okiishi (Ohio Bar. No. 0096706)
FINNEY LAW FIRM LLC
4270 Ivy Pointe Blvd., Ste 225
Cincinnati, Ohio 45245
(513) 943-6659
Fax: (513) 943-6669
*matt@finneylawfirm.com*

1

*akimble@billerkimble.com*
*abiller@billerkimble.com*
[www.billerkimble.com](www.billerkimble.com)
*Counsel for Plaintiff*

### Memorandum in Support of Plaintiff's Unopposed Motion for Settlement Approval

**1. Introduction**

The parties have entered into a Settlement Agreement to resolve this case. The parties seek an order (1) granting final approval of the Settlement Agreement as fair, reasonable, and adequate; (2) approving the requested award of attorney's fees and costs; (3) approving the service award; (4) dismissing the action with prejudice; and (5) ordering the parties to carry out the remaining terms of the Settlement Agreement. Defendants do not oppose this request.

**2. Standard of Approval for an FLSA Settlement.**

In evaluating an FLSA settlement, the Court's role "is comparable to that of a court in a settlement of a class action." *Kritzer v. Safelite Sols., LLC*, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D. Ohio May 30, 2012). The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. *Id.* at *5–6. As described below, the proposed settlement meets this standard.

**3. Background of the Lawsuit and Claims**

Plaintiff Megan Gilstrap is a former tipped worker at Sushinati, one of Defendants' three restaurants. Ms. Gilstrap alleges that Defendants unlawfully retained employee tip money from Ms. Gilstrap and similarly situated employees.[1] Defendants deny Ms. Gilstrap's allegations.

---

[1] *See, e.g.*, 29 U.S.C. 203(m)(2)(b) (prohibiting an employer from retaining employee tip money).

On August 10, 2022, Ms. Gilstrap asked the Court to authorize notice of the lawsuit to similarly situated employees. Doc. 4. On October 7, 2022, the parties stipulated to send notice. *See* Stipulation, Doc. 18, *and see* Order, Doc. 25. Twenty-two people joined the lawsuit.

Following the opt-in period (approximately April 30, 2023), Defendants provided documents to allow the parties to evaluate the case for settlement purposes. On June 29, 2023, the parties attended a mediation with a professional mediator. The mediation ended at an impasse. For several more months, the parties engaged in additional, formal discovery, informal document exchange (including the defendants' financial records), and further settlement negotiations.

In mid-November, the parties reached an agreement in principle to resolve the claims of the opt-ins. The Settlement Agreement reflects that deal and, if approved, resolves this lawsuit.

4. **Summary of Settlement Terms**

The Settlement Agreement creates a settlement fund of $150,000, inclusive of attorney's fees, expenses, and service awards. *See* Exhibit 1. Under the Agreement, each person who worked for Defendants and filed a consent-to-join form with the court on or before the November 30, 2023, will receive a prorated share of the settlement fund based on their hours worked during the relevant time period. In exchange, the opt-ins will release their wage claims raised in the lawsuit or those claims that could have been raised based on the factual allegations in the Complaint.

5. **The settlement provides for a fair resolution of disputed claims.**

The most important factor to consider when evaluating a proposed settlement is Plaintiff's probability of success on the merits. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *19. To evaluate this factor, Plaintiff will describe the facts and law underlying her claims.

Plaintiff alleges that Defendants unlawfully retained employee tip money. *See* Doc. 4, pp. 4–5. Defendants deny that they unlawfully retained tip money, and, in any case, Defendants changed their practices by the end of September 2021.

The FLSA prohibits employers from retaining employee tip money. 29 U.S.C. 203(m). An employer that violates this rule is liable for the tip credit that the employer claimed (*i.e.*, the difference between full minimum wage and the lesser wage that the employer paid) and the retained tips. *See* 29 U.S.C. 203(m)(2); 29 U.S.C. 216(b). Ohio's Minimum Wage Amendment is generally interpreted the same as the FLSA. *Haase v. Cameron Mitchell Rests., LLC*, 2024 U.S. Dist. LEXIS 355, at *26–27 (S.D. Ohio Jan 2, 2024) ("Federal and state courts have repeatedly concluded that 'Ohio law incorporates the FLSA's definitions, standards, and principles for its minimum wage and overtime compensation provisions.'" (internal citations removed)).

Plaintiff also asserts a claim under Ohio's Prompt Pay Act, O.R.C. § 4113.15. This claim essentially has two components—unpaid wages and liquidated damages.

The unpaid wages portion can "rise and fall" with an underlying wage violation (*i.e.*, like an FLSA violation). *See, e.g., Parks v. Cent. USA Wireless,* LLC, 2019 U.S. Dist. LEXIS 167502, at *15 (S.D. Ohio Sep. 29, 2019). Because the damages for this claim mirror the unpaid wages for the above violations, the analysis is the same, but Plaintiff may only recover unpaid wages once.

The liquidated damages portion, however, is only available when there is no dispute as to the underlying wages. O.R.C. § 4113.15(B). Here, there is arguably a dispute over whether the unpaid wages were due. If Plaintiff prevailed on this claim, the class members could have been awarded an additional $200 each per pay period.

With respect to potential damages, if Plaintiff and the opt-ins proved a violation, then the opt-ins would be entitled to the tip credit plus any retained tips. Based on Defendants' records, the tip credit amount is approximately $54,000 for the opt-ins. Defendants do not have records of any retained tips. Based on records of tips received, however, Plaintiff estimates that allegedly retained tips might be up to $71,000. Thus, total unpaid wages plus tips, according to Plaintiff's calculations—which Defendants dispute as accurate—is approximately $125,000. Additional liquidated damages or Ohio Minimum Wage Amendment damages may also apply to this number.

### 5.1. Other Considerations

When evaluating settlements, courts also look at other factors, including (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the judgment of experienced trial counsel; (4) the nature of the negotiations; (5) any objections from class members, and (6) the public interest. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *20. Each factor is addressed below.

**Complexity, expense, and likely duration.** Wage and hour class and collective actions are inherently complex and time-consuming. *Arledge v. Domino's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 179474, at *5 (S.D. Ohio Oct. 17, 2018). As wage cases go, however, the theory in this case is straightforward—Plaintiff contends tips were unlawfully retained. Proving this, however, is another matter because Defendants lost their records of tips pooled or allegedly retained, and Defendants disputed that the practice occurred, at least as described in Plaintiff's Complaint.

As a result, the case would require discovery into Defendants' practices and tracing tip money in the absence of clear records. Taking this case to trial would entail a substantial expenditure of time, fees, and expenses, all of which weigh in favor of settling the case at this stage.

**The stage of the proceedings and amount of discovery completed.** This case settled early in the proceedings, but after the parties had exchanged sufficient discovery to evaluate the strengths and weaknesses of each claim and calculate damages. Specifically, Defendants produced payroll records of the workers' hours worked, wages paid, and tips earned. This data formed the basis of the parties' settlement negotiations. Considering these factors, the parties are able to properly evaluate settlement at this stage.

**The judgment of experienced trial counsel.** In addition to considering the strengths and weaknesses of Plaintiff's claims, Plaintiff's counsel evaluated financial disclosures from Defendants. Those disclosures justify this settlement as a good result for the opt-ins because there are collectability concerns here. The opt-ins risk a worse result if they forced Defendants to incur the attorney's fees and costs associated with taking this case to trial; *i.e.*, there may be less money left for the workers even if a judgment was larger than the settlement amount.

Plaintiff's counsel attests that, given the strengths and weaknesses of the claims and collectability, this settlement is fair, adequate, and reasonable. Plaintiff's counsel are well-versed in wage cases. *See Mullins v. Southern Ohio Pizza, Inc.*, 2019 U.S. Dist. LEXIS 11019, at *5 (S.D. Ohio Jan. 18, 2019). Defendants' counsel are likewise experts in employment law.

**The nature of negotiations.** The parties reached the above settlement only after substantial negotiations, which included a mediation with a professional mediator, and additional document exchanges and discovery. This factor supports approving the proposed settlement.

**Any objections from class members.** Each of the opt-ins have affirmatively joined this litigation and delegated settlement authority to Plaintiff.

**The public interest.** The public interest generally favors settling litigation. This case is no different.

### 5.2. The payment of attorneys' fees and costs is reasonable.

Plaintiff's Counsel seeks one third of the settlement fund as attorneys' fees ($50,000), plus reimbursement of advanced litigation costs. Defendants do not to object to this award, which is a standard amount in this type of case. *See, e.g.*, *Neal v. Hallsons of Leb., Inc.*, 2022 U.S. Dist. LEXIS 42664, at * 2 (S.D. Ohio Mar. 2, 2022).[2]

When assessing the reasonableness of a fee petition, district courts engage in a two-part analysis. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007). First, the district court determines the method for calculating fees: either the percentage of the fund approach or the lodestar approach. *Id.* (citation omitted). Second, the court analyzes the six *Ramey* factors. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

### 5.2.1. The Court should adopt the percentage approach.

First, the Court must decide if it will award fees based on either the "percentage-of-the-fund" or "lodestar." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 761. "This flexible approach allows the Court to account for the unique and varied circumstances present in each class action." *Arp*, 2020 U.S. Dist. LEXIS 207512, at *16.

The "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases." *Id.*, *quoting Hebert v. Chesapeake Operating, Inc.*, 2019 U.S. Dist. LEXIS 160792, at *11 (S.D. Ohio Sept. 20, 2019), *and Swigart v. Fifth Third Bank*, 2014

---

[2] *See also Mullins v. Data Mgt. Co.*, 2021 U.S. Dist. LEXIS 124891, at *17 (S.D. Ohio June 21, 2021); *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *13; *McConnell*, 2021 U.S. Dist. LEXIS 92836, at *21; *Arp v. Hohla & Wyss Ents., LLP*, 2020 U.S. Dist. LEXIS 207512, at *15 (S.D. Ohio Nov. 5, 2020).

U.S. Dist. LEXIS 94450, at *14-15 (S.D. Ohio July 11, 2014). It is, therefore, the "preferred method in this district." *Id.*

"Absent compelling reasons to the contrary," courts in the Southern District of Ohio prefer the percentage method in wage and hour cases, "as it best reflects FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 U.S. Dist. LEXIS 32459, at *16 (S.D. Ohio Feb. 16, 2021).[3] "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class []." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 762. "While the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure.'" *Id.*

Here, the Court should adopt the percentage of the fund approach and award class counsel one-third of the settlement fund in attorneys' fees. An award of one-third "is a normal fee amount in a wage and hour case." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *14-15.

### 5.2.2. The *Ramey* Factors

Next, the Court must analyze the six *Ramey* factors to ensure the attorneys' fee award is reasonable: (1) the value of benefits rendered to the class; (2) society's take in rewarding attorneys who produce such benefits in order the maintain an incentive to others; (3) whether the services were undertaken on a contingent basis; (4) the value of the services on an hourly basis (*i.e.*, a

---

[3] In wage and hour cases, the "compelling circumstances" that give rise to application of the lodestar method usually involve a situation where a plaintiff or a class of plaintiffs' damages are relatively small, but they have suffered damages nonetheless. In such a circumstance, counsel is often required to expend substantial attorney time—sometimes accruing fees many times greater than the value of the case—in order to help workers recover their wages. It is essential to the proper functioning of the FLSA and associated state laws that lawyers who undertake these cases be compensated for these important efforts. This is the type of "compelling circumstance" that augers in favor of applying a lodestar method in a wage and hour class/collective action settlement. *See Arp*, 2020 U.S. Dist. LEXIS 207512, n. 1; *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 615 (6th Cir.2021) (reversing and remanding fee award limited to a percentage of recovery in wage case).

lodestar crosscheck); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). Each factor weighs in favor of approving the fee.

First, the settlement results in a substantial benefit to the class. Based on the payroll records produced by Defendants, the settlement proceeds exceed the total unpaid wages and tips. After deducting the requested attorneys' fees, litigation costs, and incentive award, the settlement proceeds still provides over 72% of the Collective Members' unpaid wages. This is an excellent result. *See Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987). (finding settlement of 10% of the total amount sought is adequate due to risks and costs of trial).[4] This factor supports the requested fee award.

Second, there is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources, and "the societal benefit is particularly acute in wage and hour cases brought on behalf of minimum wage workers." *Arp*, 2020 U.S. Dist. LEXIS 207512, *17-18. "The attorneys who take on class action cases enable this." *Id.*, citing *Moore v. Aerotek, Inc.*, 2017 U.S. Dist. LEXIS 102621, *26-27 (S.D. Ohio June 30, 2017).

Society has a strong interest in rewarding lawyers who bring cases for unpaid wages. *Neal v. Hallsons of Leb., Inc.*, 2022 U.S. Dist. LEXIS 42664 (Mar. 2, 2022). "The Supreme Court has repeatedly held that FLSA rights are so important as to be wholly non-waivable. A strong public policy exists to compensate lawyers who take on these cases—typically on behalf of low-wage

---

[4] *See also Viceral v. Mistras Group, Inc.*, 2016 U.S. Dist. LEXIS 140759, *21 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth v. Case Farms Processing, Inc.*, 2010 U.S. Dist. LEXIS 20446, *12 (N.D. Ohio Mar. 8, 2010) (finding recovery of one-third of owed wages for class members, before deducting attorney's fees and costs, is "well above… average.").

10

workers with few resources and against well-funded employers. These cases entail substantial risk, time, effort, and expertise to successfully litigate. It is therefore important that the lawyers who assume this type of representation be compensated in a way that is commensurate with the resources required to do so. To do otherwise would undermine Congress's goal of encouraging private enforcement of FLSA rights." (internal citations omitted) *Smith v. Local Cantina, LLC*, 2022 U.S. Dist. LEXIS 73598 (Apr. 19, 2022).

Third, counsel undertook this case on a wholly-contingent basis, with no guarantee of recovery. *See* Biller Decl., ¶10. This supports the proposed fee award.

Fourth, while a lodestar cross-check is not required, it supports the requested attorneys' fees award. Plaintiff's counsel has worked 101.33 hours on this case for a total lodestar of $37,529. *Id.* at ¶11, 13. This results in a lodestar multiplier of 1.33. This amount, however, underestimates the actual lodestar in several ways. *Id.* at ¶12.

Further, Plaintiff's counsel will put in more time on this case after final approval. "Class Counsel frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters." *Arp*, 2020 U.S. Dist. LEXIS 207512, at *19. This factor supports the requested fee award. *See, e.g., Id.* (approving 5.29 multiplier). This is especially relevant here because Plaintiff's counsel is assuming the task of administering the settlement to save expenses that the class would otherwise bear in hiring a third-party administrator.

Fifth, courts have held wage and hour cases to be "inherently complex." *Mullins*, 2021 U.S. Dist. LEXIS 124891, at *9; *Neal*, 2022 U.S. Dist. LEXIS 42664, at *4. Wage and hour cases often raise complex legal issues involving the changing landscape of federal and state law,

11

regulations, agency guidance, and case law. *Smith*, 2022 U.S. Dist. LEXIS 73598 at *17. This factor supports approving of the requested fee award.

Sixth, the attorneys for both sides are skilled litigators experienced with wage claims, as well as class and collective actions. Biller Decl., ¶¶ 15–16. Similarly, Defendants' lead counsel, Neal Shah, a partner with Frost Brown Todd LLP, is likewise a highly experienced employment lawyer and litigator. This factor supports the requested fee award.

Because all the *Ramey* factors support the requested fee award, Plaintiff requests the Court award class counsel one third of the settlement fund as attorneys' fees.

Finally, Plaintiff's counsel incurred $1,948 in advanced litigation costs in pursuit of this case. These costs relate to the filing fee, process server fees, sending the collective action notice, and mediation fees. These costs are reasonable and should be awarded to class counsel out of the settlement fund.

### 5.3. The incentive payment is reasonable.

The incentive payment is reasonable, and similar payments are routinely awarded. "Courts routinely approve incentive awards to compensate named plaintiff for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997); *see also Dun & Bradstreet*, 130 F.R.D 366, 374 (S.D. Ohio 1990) (approving incentive awards to class representatives for their time and expenses incurred pursing the litigation). Such compensation for time, effort, risk, and service does not improperly grant preferential treatment to class representatives.

The settlement agreement earmarks $7,500 to Plaintiff for her work in bringing and prosecuting the case on behalf of the tipped workers. This amount similar to the amounts awarded

12

in other wage cases.[5] Plaintiff has spent time and effort working with Class Counsel on this case. As in any case, Plaintiff bore risk in proceeding with the case, including financial and reputational risk. Without Plaintiff's participation, this settlement would not have occurred.

## 6. Conclusion

Plaintiff seeks an order (1) granting approval of the Settlement Agreement as fair, reasonable, and adequate; (2) approving the requested award of attorney's fees and costs; (3) approving the service award; (4) dismissing the action with prejudice; and (5) ordering the parties carry out the remaining terms of the Settlement Agreement.

Respectfully submitted,

/s/ *Andrew Biller*
Andrew R. Biller (Ohio Bar No. 0081452)
Andrew P. Kimble (Ohio Bar No. 0093172)
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*abiller@billerkimble.com*
www.billerkimble.com
*Counsel for Plaintiff*

Matthew S. Okiishi (Ohio Bar. No. 0096706)
FINNEY LAW FIRM LLC
4270 Ivy Pointe Blvd., Ste 225
Cincinnati, Ohio 45245
(513) 943-6659
Fax: (513) 943-6669
*matt@finneylawfirm.com*

---

[5] *See Arledge*, 2018 U.S. Dist. LEXIS 179474, *6; *Mullins*, 2019 LEXIS 11019, *6; *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, *7-8; *Casteel v. Antonio's Pizza, Inc.*, No. 1:18-cv-1277, Doc. 52 (N.D. Ohio May 17, 2019); *Arp v. Hohla & Wyss Enterprises, LLC*, 2020 U.S. Dist. LEXIS 207512, *7 (S.D. Ohio Nov. 5, 2020).

**Certificate of Service**

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent to all Parties by operation of the Court's electronic filing system.

/s/ *Andrew Biller*
Andrew Biller

14