## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**MEGAN GILSTRAP,**

      **Plaintiff,**

    **v.**

**SUSHINATI LLC,** *et al.*,

    **Defendants.**

**Case No. 1:22-cv-434**

**JUDGE DOUGLAS R. COLE**

### OPINION AND ORDER

Before the Court is Plaintiffs' unopposed motion (Doc. 36) seeking this Court's approval of the parties' settlement of Plaintiffs' Fair Labor Standards Act (FLSA) and corresponding state-law claims. The Court certainly understands why Plaintiffs filed this motion. Many courts over the years have assumed that FLSA settlements—settlements between a defendant employer and a group of plaintiff-employees, each of whom have affirmatively opted into the suit—require court approval. But neither the Supreme Court nor the Sixth Circuit has held that such approval is required. And having now reviewed various opinions on the issue from other jurisdictions, this Court, as a matter of first impression, finds that it is not. Neither the FLSA's text nor any other legal authority the Court could identify supports a rule enabling district courts to exercise what amounts to a veto power over a private settlement agreement. Because the Court concludes it lacks authority to pass on the fairness or propriety of a proposed private settlement agreement among the parties to this action, it **DENIES** Plaintiffs' Unopposed Motion for Settlement Approval (Doc. 36). That said, the

parties are free to stipulate to the dismissal of this action under Federal Rule of Civil Procedure 41(a), and even free to ask the Court to retain jurisdiction over the settlement agreement in connection with that dismissal, *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994).

## BACKGROUND

The facts relevant to this Opinion and Order are straightforward. Plaintiff Megan Gilstrap worked as a server or hostess at three restaurants owned by Mike and Shelly Choi. (Compl., Doc. 1, #85, 97). The Chois operated the three restaurants as a single integrated enterprise through several LLCs (e.g., SUSHINATI LLC; House of Korea, LLC; The Korea House, LLC; and 3501Seoul LLC), which are also defendants here.[1] (*Id.* at #84–93). It was the Chois' practice to allow employees— including servers—to transfer between restaurants. (*Id.* at #87). The Chois paid their servers, like many other restaurants, Ohio's minimum wage minus a tip credit. (*Id.* at #94).

Until October 2020, the Chois allegedly required their tipped employees to pay approximately 5% of the tips they earned during each shift back to the restaurant in cash. (*Id.*). From October 2020 to February 2022, the Chois reduced that amount to approximately 3%. (*Id.* at #95). The specific percentage or amount required at the end of each shift appears to have varied somewhat on a shift-by-shift basis. (*Id.*). In any event, the Chois then allegedly distributed the repaid tip money to the kitchen staff.

---

[1] Because the Complaint alleges that the Chois exercised control over all the business entities, (*see* Doc. 1, #86, 90–92), the Court refers to the defendants collectively as the Chois.

2

(*Id.*). The Chois also maintained a tip jar at the hostess stand of one of the three restaurants and retained all the tips from that jar for the restaurant itself rather than distributing them to tipped employees. (*Id.*).

Claiming that those practices violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, along with several Ohio laws, Gilstrap sued. (Doc. 1). She sought to maintain an opt-in collective action under § 16(b) of the FLSA, 29 U.S.C. § 216(b), for the FLSA claim and a Rule 23 class action for the remaining claims.[2] (*Id.* at #98–103). After the defendants answered, (Doc. 16), the parties filed a Joint Stipulation for Conditional Certification (Doc. 18). The latter asked this Court to approve a notice plan for the FLSA collective action. The Court did so. (Doc. 25). In response to the notice, twenty-two[3] employees opted in as plaintiffs in this action. (Docs. 1-8, 20, 26–34). The same counsel who represents Gilstrap represents each of these additional plaintiffs. (*Id.*).

The parties engaged in settlement negotiations and eventually came to an agreement. Plaintiffs then filed an unopposed motion for settlement approval, which asks this Court to find that the settlement agreement is "fair, reasonable, and adequate."[4] (Doc. 36, #341). Gilstrap also asked the Court to approve the requested award of attorneys' fees and costs and the "service award" to her. (*Id.*).

---

[2] While the Complaint styled the state-law claims as putative class claims, Gilstrap never moved for class certification. So the state law claims here are asserted only by party plaintiffs. Those claims are released in the settlement agreement. (Doc. 36-2, #360).

[3] The first employee, Lara Gates, technically opted in before the Court authorized notice, but neither party contends her notice is invalid. (Doc. 1-8, #126).

[4] The motion itself says that it is "Plaintiff" who is asking the Court to approve the settlement. But, as described below, once the other similarly-situated employees opt in by filing a

## LAW AND ANALYSIS

Many parties, and many courts, proceed on the assumption that federal law requires court approval for an FLSA settlement. If that is so, then by necessary implication federal courts must have the power to grant such approval. But, as the Court explains below, *see infra* Part A, federal law imposes no such requirement. The remaining question, then, is whether parties nonetheless can request such approval. In other words, if the FLSA does not require court approval, is there some other grant of authority that would allow a court to approve a settlement agreement in an FLSA case where the parties request it? As also explained below, *see infra* Part B, the Court concludes that no such authority exists. And absent such authority, the Court cannot approve the settlement agreement here.

## A. Court Approval of FLSA Settlements Is Not Required

### 1. The FLSA's Text Does Not Require Court Approval

The FLSA's text provides no support for a court-approval rule. The FLSA imposes mandatory conditions for employment relationships whenever the employer is engaged in commerce. For example, § 6 of the FLSA, 29 U.S.C. § 206, requires employers to pay their non-exempt employees a set minimum hourly wage. And the following section, *id.* § 207, requires employers to pay employees 1.5x their normal wage rate for overtime hours (those in excess of eight in a day or forty in a week). Relevant here, § 3(m)(2)(B), 29 U.S.C. § 203(m)(2)(B), prohibits an employer from

---

consent, they are joined to the action as plaintiffs. So, as the settlement agreement itself reflects, it is *all* of the plaintiffs who are seeking approval.

keeping tips "received by its employees for any purpose[.]" These provisions speak in the classic language of prescriptions and prohibitions. FLSA § 6(a), 29 U.S.C. § 206(a) ("Every employer *shall* pay …" (emphasis added)); FLSA § 7(a)(2), 29 U.S.C. § 207(a)(2) ("No employer *shall* employ …" (emphasis added)). They create and delineate an employee's substantive rights, but those specific provisions do not provide a remedy or cause of action for those rights, nor do they describe what an employee may or may not do to vindicate those rights.

Another provision, § 16 of the FLSA, 29 U.S.C. § 216, addresses that issue. Subsection (b) (with a stylistic edit to make the provision easier to read) states,

> Any employer who violates the [overtime and minimum wage provisions] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. … Any employer who violates section []3(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages.
>
> An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in [sic] behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

Section 16(b) performs several functions. It creates a cause of action for employees to vindicate their rights; it creates a mechanism for similarly situated plaintiffs to litigate as a collective; and, should the case proceed all the way to judgment, it

provides for a post-judgment award of reasonable attorneys' fees for victorious plaintiffs. But § 16(b) nowhere states—or even implies—that plaintiffs may not settle their FLSA claims before judgment or that, if they do, that settlement will be contingent on court approval.

Subsection (c) provides no more help on that front than subsection (b). That subsection reads in relevant part,

> The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees … and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have [to sue] … . The Secretary may bring an action in any court of competent jurisdiction to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages.

This subsection authorizes the Secretary of the Department of Labor to initiate suits on behalf of covered employees and to settle claims on their behalf (provided the employee takes the affirmative step of cashing the check). And it makes sense that Congress included this authorization via a separate provision—federal agencies typically do not have the authority to litigate on behalf of individual plaintiffs. But just because Congress has specifically authorized the Secretary to litigate and to settle on behalf of employees when the Secretary opts to do so does *not* mean that employees, in cases where the Secretary is not so involved, do not enjoy the normal rights of litigants in civil cases—including the right to dismiss their claim voluntarily in exchange for a settlement they find acceptable. *See* Fed. R. Civ. P. 41(a). If anything, contrasting subsection (c)'s grant of settlement authority to the Secretary (when the Secretary initiates suit) with subsection (b)'s absence of any similar grant

6

of settlement authority to the federal courts (in suits where the Secretary is not involved), suggests that the statute does *not* displace those normal rules. *See Alcantara v. Duran Landscaping, Inc.*, No. 2:21-cv-3947, 2022 WL 2703610, at *3 (E.D. Pa. July 12, 2022).

In short, "[n]owhere in the text of the current or prior versions of § []16 … is there a command that FLSA actions cannot be settled or otherwise dismissed without approval from a court." *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 403 (2d Cir. 2019). Absent textual support, the Court turns to case law.

### 2. No Binding Case Law Holds that Court Approval is Required

Neither the Supreme Court nor the Sixth Circuit has ever squarely held that FLSA settlements require preapproval by a federal court. The Supreme Court has, however, held that executed releases of FLSA claims are unenforceable in certain contexts. But nothing in those cases says, or even really suggests, that they support an approval-required regime.

In *Brooklyn Savings Bank v. O'Neil*, the plaintiffs in two of the consolidated cases (one a factory worker, the other a night watchman for an office building) both sued their respective employers claiming that the employers failed to pay the overtime wage rate required by the FLSA. 324 U.S. 697, 699, 701 (1945). Both employees had, before bringing suit, signed a release of their FLSA claims in return for a portion of the owed back wages. *Id.* at 700–02. Both employers raised the pre-suit release as a defense to liability. *Id.* at 700, 702. The Supreme Court held that the releases were invalid because "statutory right[s] conferred on [] private part[ies]"

(like the rights conferred by the FLSA) that also "affect[] the public interest[] may not be waived or released if such waiver or release contravenes the statutory policy." *Id.* at 704. According to the Court, Congress enacted the FLSA to "protect certain groups of the population from substandard wages and excessive hours" and to counterbalance the "unequal bargaining power" between employers and employees. *Id.* at 706. Against that backdrop, the Court held that a simple waiver of overtime wages would "nullify the purposes of the Act." *Id.* at 707. The Court supported its holding by drawing an analogy to fundamental principles of contract law: simple contractual waivers of mandatory legal obligations would vitiate the "uniformly held" rule that "contracts tending to encourage violations of laws are void as contrary to public policy." *Id.* at 710. The Court was careful, though, to limit its holding to simple waivers of statutory rights that did not involve "settlement[s] of [] bona fide dispute[s] between employer[s] and employee[s] [either] with respect to coverage or amount due." *Id.* at 703.

*D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946), decided a year after *O'Neil*, considered *O'Neil*'s logic in the context of a settlement of a bona fide dispute in an FLSA action. In *Gangi*, several building service and maintenance employees demanded overtime pay under the FLSA from their employer, a real estate company that leased building space to tenants who sold commercial products to distributors but did not themselves ship the products interstate. *Id.* at 111. When the building employees threatened to sue, the real estate company employer paid the allegedly due overtime but did not pay the liquidated damages the FLSA specified. *Id.* at 112.

8

In exchange for the payment, the employer obtained releases from the building employees. *Id.* Despite recognizing that the parties genuinely disputed the FLSA's applicability to the employer's business (given its largely intrastate nature), the Supreme Court held that "liquidated damages cannot be bargained away by bona fide settlements of disputes over coverage." *Id.* at 114. Relying on the policy rationale of *O'Neil*, the *Gangi* Court stated that the "purpose of the Act, which … was to secure for the lowest paid segment of the nation's workers a subsistence wage, leads to the conclusion that neither wages nor the damages for withholding them are capable of reduction by compromise of controversies over coverage." *Id.* at 116. Once again, however, the Court limited its holding, this time to disputes over *coverage*. It stated, "[n]or do we need to consider here the possibility of compromises in other situations which may arise, such as a dispute over the numbers of hours worked or the regular rate of employment." *Id.* at 114–15.

Most importantly for present purposes, the *O'Neil* and *Gangi* decisions say nothing about whether a federal court is required, or even has the authority, to approve FLSA settlements. Why? Because both cases involved questions regarding only the *enforceability* of *pre-litigation* contractual releases. Both defendants in *O'Neil* and *Gangi* raised the prior signed releases as *defenses* to the FLSA suits because the release was already executed. And in that context, the Supreme Court, using policy and contract-law principles, found those releases unenforceable. But the Court nowhere suggested that the parties instead should have submitted such settlements to a lower court for approval before entering them, that the result would

9

have been different if the parties had done so, or that the lower court would have had the power to entertain such a request, had the parties made one. And it would be quite a leap of logic to say that the mere fact that a release may prove unenforceable down the road gives rise to the judicial power to review and to approve settlements ex ante. To the contrary, the two inquiries are unrelated. So even were this Court to assume that all pre-suit FLSA settlements (over bona fide disputes or not) were unenforceable under *O'Neil* and *Gangi*,[5] that unenforceability still does not translate into the FLSA's requiring the Court to exercise this purported approval power at the settlement agreement's formation or suggest that such approval (were it to exist) would turn on the settlement's reasonableness or fairness. Nor has any Supreme Court decision (or Sixth Circuit decision) since *O'Neil* or *Gangi* suggested that is the case.

### 3. Nonbinding Case Law Supporting a Court-Approval Rule for FLSA Settlements Is Unpersuasive

So how did it come to pass that federal courts began inserting themselves into the FLSA settlement process? The first case holding that courts must approve or

---

[5] It is difficult to discern the breadth of *Gangi*'s impact when the issue it addressed—enforceability—is so rarely litigated today. In a world in which parties routinely seek judicial approval of FLSA settlements, few litigants arrive at the courthouse doors with a privately negotiated litigation release like the one in *Gangi*. The courts that have addressed the enforceability of such releases have differed in their approaches. *See Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 255 (5th Cir. 2012) (citing *Gangi*'s carveout of factual disputes over hours worked or rate of pay and finding employee's pre-litigation release enforceable); *see also Holt v. City of Battle Creek*, No. 1:15-cv-931, 2018 WL 2197742 (W.D. Mich. Feb. 6, 2018) (citing *Gangi* and denying defendant's motion for summary judgment asserting employee's release of claims in severance agreement satisfied plaintiff's claims). The Court notes those differing approaches merely to observe that *O'Neil* and *Gangi* may not preclude the enforceability of as many settlements as their sweeping language seems to suggest.

reject FLSA settlements on the grounds of "fairness" was *Lynn's Food Stores, Inc. v. United States*. 679 F.2d 1350 (11th Cir. 1982). *Lynn's Food Stores* stated that, apart from settlements supervised by the Secretary of the Department of Labor, the only way an FLSA claim could be settled was for the "district court [to] enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.* at 1353. For that proposition, the Eleventh Circuit cited footnote eight of *Gangi*. *Id.*

Footnote eight differentiated "bona fide stipulated judgments" of FLSA claims from "bona fide settlements." *Gangi*, 328 U.S. at 113 n.8. Responding to petitioner's argument that the two were equivalent, *Gangi* stated that bona fide stipulated judgments were distinguishable because they involved the filing of a lawsuit, the "pleading [of] the issues[,] and [the] submitting the judgment to judicial scrutiny." *Id.* The *Gangi* Court then noted, however, that the possible distinction was purely dicta, as the underlying lawsuit involved a bona fide settlement, not a stipulated judgment. *Id.* The Eleventh Circuit nonetheless cited footnote eight to establish the proposition that the *only* way to settle an employer/employee FLSA suit was for the district court to approve or to reject a settlement agreement after it independently scrutinized the fairness of that agreement, and then presumably to enter that settlement agreement as a stipulated judgment. *Lynn's Food Stores*, 679 F.2d at 1353.

But when viewed against *Gangi*'s actual facts, footnote eight was not differentiating between unsupervised litigation settlements and stipulated judgments (often called consent decrees). Rather, it seemed to be differentiating between private *pre-litigation* releases of claims and public post-filing resolutions.

11

*See Mei Xing Yu*, 944 F.3d at 405–06 (reading footnote eight this way). As the Second Circuit put it, "[i]n other words, the act of filing the suit, airing the parties' dirty laundry in public and before a judge, *and then* coming to an agreement distinguishes stipulated judgments from private, back-room compromises that could easily result in exploitation of the worker and the release of his or her rights." *Id*. at 406. But if that is the correct understanding of the footnote, it has precious little to say about the permissibility of a privately negotiated settlement like the one here that disposes of a pending lawsuit—after the airing of the parties' dirty laundry. Moreover, as noted above, *Gangi*'s primary holding related to the *enforceability* of settlements, not to the existence of any pre-approval requirement.

Despite footnote eight's limited force, *Lynn's Food Stores* relied on it to establish the requirement that FLSA settlements must be approved by district courts. And from those humble beginnings a tsunami has followed. As of this writing, courts across the country have cited this aspect of *Lynn's Food Stores* more than 4,000 times. *E.g.*, *Pitty v. Conrad's Laserwash Co.*, No. 5:23-cv-2034, 2023 WL 7166917, at *1 (N.D. Ohio Oct. 31, 2023) (citing *Lynn's Food Stores* in support of a court-approval rule); *Lopez v. Silfex, Inc.*, No. 3:21-cv-61, 2021 WL 5795280, at *3 (S.D. Ohio Dec. 3, 2021) (same).

Of course, as an Eleventh Circuit decision, *Lynn's Food Stores* is not binding on this Court. And, because this Court finds that its holding lacks support, the Court declines to follow its reasoning. *Washington v. City of Cincinnati*, No. 1:23-cv-230,

2024 WL 474403, at *5 n.7 (S.D. Ohio Feb. 7, 2024); *see Lovelo v. Clermont Cnty. Sheriff's Off.*, No. 1:23-cv-114, 2023 WL 8828008, at *3–*4 (S.D. Ohio Dec. 21, 2023).

### 4. A Court-Approval Rule is at Odds with the Federal Rules of Civil Procedure

Not only is there a dearth of authority supporting a court-approval rule, such a rule would be incompatible with the Federal Rules of Civil Procedure. Those rules, which bind the Court, provide that parties may freely dismiss lawsuits without court approval. Federal Rule of Civil Procedure 41(a)(1)(A) states that—subject to (as relevant here) Rule 23(e) or "any applicable federal statute"—a plaintiff may dismiss an action without court approval by filing "a stipulation of dismissal signed by all parties." An "applicable federal statute" is one which, by its terms, "expressly or impliedly require[s] court approval before a claim may be dismissed." *Four Winds Interactive LLC v. 22 Miles, Inc.*, No. 16-cv-00704, 2018 WL 525604, at *2 (D. Colo. Jan. 24, 2018); *see Andrews v. Persley*, 669 F. App'x 529, 530 (11th Cir. 2016) (rejecting argument that the Prison Litigation Reform Act was an "applicable federal statute" because "no language in the PLRA indicate[s] Congress' intent to override Rule 41(a)'s operation in the prisoner litigation context"). As detailed above, the FLSA says nothing about whether a party may or may not dismiss an FLSA claim voluntarily. In the absence of such a provision, Rule 41(a)'s default rule should apply. But a court-approval rule for FLSA settlements violates that rule because it prevents parties from dismissing a lawsuit that they mutually wish to dismiss. *See Askew v. Inter-Cont'l Hotels Corp.*, 620 F. Supp. 3d 635, 642–43 (W.D. Ky. Aug. 8, 2022).

True, the Second Circuit disagrees with that reasoning. Citing the portion of Rule 41(a)(1)(A) stating that the dismissal rule is subject to any "applicable federal statute," that court held that the "unique policy considerations" of the FLSA render it an "applicable federal statute." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). But in deciding that the FLSA constituted an "applicable federal statute" for Rule 41 purposes, the court did not cite any statutory text or case law. Rather, the court relied solely on policy considerations to justify that decision.

That presents a problem. Policy considerations cannot and should not "substitute for a conclusion grounded in the statute's text and structure."[6] *CTS Corp. v. Waldburger*, 573 U.S. 1, 12 (2014); *Alcantara*, 2022 WL 2703610, at *3–*4 (citing *CTS Corp.* and disagreeing with the Second Circuit's Rule 41 holding). Courts do not impose their own policy preferences, but rather enforce those reflected in the text that Congress adopts and the President signs. *Gangi*, 328 U.S. at 121–22 (Frankfurter, J., dissenting) ("For purposes of judicial enforcement, the 'policy' of a statute should be drawn out of its terms, as nourished by their proper environment, and not, like nitrogen, out of the air."). And for the reasons already stated, *see supra* Section A.1, the text of the FLSA contains no provision limiting dismissal or displacing Rule 41(a)(1)(A). Perhaps that is why the Second Circuit's own later decision in *Mei Xing Yu* seems to question *Cheek*'s underpinnings, while also strictly limiting it to its facts. *See* 944 F.3d at 410–12.

---

[6] This principle is so strongly embedded in our caselaw that it seems to rear its head in at least one Supreme Court opinion every term. *E.g.*, *Pulsifer v. United States*, 144 S. Ct. 718, 736–37 (2024).

Nor does Rule 23 override Rule 41(a) as applied to FLSA actions. True, under Rule 23(e), a class action may not be dismissed or settled without court approval. Fed. R. Civ. P. 23(e). And, as noted above, Rule 41's voluntary dismissal rule is subject to Rule 23(e), where the latter rule is applicable. But Rule 23(e) is inapplicable to FLSA claims. Indeed, the text of the FLSA is irreconcilable with Rule 23 because an FLSA collective action can be maintained only for an opt-in class composed of employees who have given written consent to join the action under § 6(b) of the FLSA, 29 U.S.C. § 216(b). *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Rule 23 class actions, on the other hand, require, as a prerequisite, a class "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). And in Rule 23(b)(3) class actions (the provision that would theoretically apply to damages claims like those brought under the FLSA), any judgment must bind and include everyone in the class who has not opted out. *Id.* at 23(c)(3)(B). Because the two standards are irreconcilable, an FLSA claim cannot be pursued as a Rule 23 class action, which means Rule 41's default rule still applies. *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536–37 (8th Cir. 1975) (issuing a writ of mandamus vacating a district court's order certifying a class under Rule 23 in an FLSA action because of the "fundamental, irreconcilable difference" between the two types of actions).[7]

---

[7] Sometimes an FLSA action includes state-law claims that fall within the federal court's supplemental jurisdiction. 28 U.S.C. § 1367. And those state-law claims can be pursued as class actions (assuming the typical class action requirements are met). Actions combining the two—an FLSA collective action and a certified class action—are sometimes referred to as "hybrid" actions. *See Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 509–10 (2d Cir. 2020). While a few district courts have held that hybrid actions are impermissible because of the

Neither the FLSA itself nor Rule 23 displaces Rule 41's unqualified allowance of parties' stipulated dismissals. A rule requiring court approval for FLSA settlements conditions the parties' ability to dismiss an action on the court's perception of the fairness of the settlement agreement, thereby violating Rule 41.

## B.  The Court Possesses No Authority to Approve or to Reject FLSA Settlements

The above demonstrates that the law does not *require* judicial approval of FLSA settlements. But that does not end the inquiry. Here, the parties have *asked* the Court to approve their private settlement. They presumably did so because they think the law requires them to seek such approval. But even so, this affirmative request nonetheless changes the context slightly. In particular, the question is no longer whether the parties *must* seek such approval (they already have, even if not obligated to do so), but rather whether the Court has *authority* to grant such approval when requested. For the reasons discussed below, the Court concludes that it lacks the authority to approve or to reject FLSA settlements.

---

inherent incompatibility between the FLSA and state-law class action procedures, *see, e.g.*, *Himmelman v. Continental Cas. Co.*, Civ. 06-166, 2006 WL 2347873, at *2 (D.N.J. Aug. 11, 2006), the courts of appeals that have addressed the issue invariably have held that hybrid actions are permissible. *See Calderone v. Scott*, 838 F.3d 1101, 1103 (11th Cir. 2016) (citing cases from the D.C., Second, Third, Seventh, and Ninth Circuits). It appears the Sixth Circuit has yet to speak directly to the issue. Here, though, the Court need not reach that issue either. While Gilstrap originally brought this action as both a collective action and a putative class action, she has never sought to certify any class, and the settlement agreement does not purport to resolve any class claims (and thus could not bind any absent class members).

1.    **A Judicial Determination Approving or Rejecting FLSA Settlement Would Constitute an Advisory Opinion**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen*, 511 U.S. at 377. The power authorized by the Constitution—the "judicial Power"—is limited to "Cases" and "Controversies." U.S. Const. art. III § 2. From the dawning of the republic, the Supreme Court has understood the case-or-controversy requirement to bar the issuance of advisory opinions. *To George Washington from Supreme Court Justices, 8 August 1793*, National Archives, https://perma.cc/6EWQ-Z2XX; *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975); *California v. Texas*, 593 U.S. 659, 673 (2021). An advisory opinion, an opinion which does not "affect the rights of the litigants in the case before [the Court]" or "resolve a real and substantial controversy," flies in the face of Article III and the separation of powers it preserves. *Preiser*, 422 U.S. at 401 (cleaned up); *see Muskrat v. United States*, 219 U.S. 346, 352–53, 355, 361–63 (1911).

Purporting to approve or to reject an FLSA settlement is an impermissible advisory opinion because the Court's approval or rejection does not "affect the rights of the litigants in the case" nor "resolve a real and substantial controversy." *Preiser*, 422 U.S. at 401 (cleaned up). Such an order merely opines on ancillary questions (the reasonableness of a settlement) that is not before the Court in a case arising under the FLSA itself.

To explain why, the Court returns to fundamental contract principles. Settlement agreements, at root, are contractual agreements between private parties to terminate litigation and to release their claims against one another in exchange

17

for other (normally monetary) consideration. *See Cogent Sol'ns Grp., LLC v. Hyalogic, LLC*, 712 F.3d 305, 309 (6th Cir. 2013). And as a general matter, two ingredients suffice to form a contract: mutual assent and consideration. Restatement (Second) of Contracts § 17 (Am. L. Inst. 1981). At the risk of stating the obvious, settlement contracts do not ordinarily require court approval.[8] *Caplan v. Fellheimer Eichen*

---

[8] The Court notes one big caveat to this Opinion and Order, which is that the parties are seeking this Court's approval of their settlement agreement as a settlement agreement—or in other words, as a contract. They do not ask the Court to enter a consent decree as a final judgment with the same essential terms as their settlement agreement.

A consent decree is "a court order that embodies the terms agreed upon by the parties as a compromise to litigation." *United States v. Alshabkhoun*, 277 F.3d 930, 934 (7th Cir. 2002). Most often arising in the context of a settlement involving prospective injunctive relief, consent decrees possess a "dual character," treated as contracts for some purposes and judgments for others. *See United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236 n.10 (1975). It is an equitable decree subject to equitable defenses and enforced by equitable remedies. *See Cook v. City of Chicago*, 192 F.3d 693, 695 (7th Cir. 1999); *see also United States v. Swift & Co.* (*Swift & Co. II*), 286 U.S. 106, 114 (1932). Before entering a consent decree, a district court must determine that the decree is "fair, adequate, and reasonable, as well as consistent with the public interest." *United States v. Lexington-Fayette Urban Cnty. Gov't*, 591 F.3d 484, 489 (6th Cir. 2010).

Because a consent decree, as an equitable order, *requires* some judicial assessment of fairness and because the decree's dual nature as a judgment and contract means that court approval is a prerequisite to its issuance, the same principles which war against judicial approval of FLSA settlement contracts seem at first blush inapplicable to consent decrees. But while principles of contract law might not preclude a consent decree resolving an FLSA claim, other jurisprudential considerations might cast doubt on the propriety of the force of such a decree as a basis for court approval of FLSA settlements.

For starters, as far as the Court is aware, almost all consent decrees involve ongoing injunctions (mostly inapplicable to FLSA settlements) or, at minimum, civil penalties (which parties cannot privately contract to impose on one another). *See, e.g., Loc. No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 510 (1986) (injunction in Title VII case); *ITT Continental*, 420 U.S. at 227–28 (injunction in antitrust case); *Su v. Allen*, No. 3:17-cv-784, 2023 WL 6323310, at *1 (W.D. Ky. Sep. 28, 2023) (civil penalty in ERISA case). FLSA actions do not typically involve injunctions or any equitable remedies so a consent decree might be unavailable as a matter of general equitable principles. *Terrace v. Thompson*, 263 U.S. 197, 214 (1923) (stating that "a suit in equity does not lie where there is a[n] … adequate … remedy at law"). Consent decrees also raise potential Article III problems where no prospective obligation exists. *See Swift & Co. v. United States* (*Swift & Co. I*), 276 U.S. 311, 326 (1928) (rejecting the argument that the case or controversy ceased before the entry of the consent decree by noting that injunctions can properly be entered as a means to

*Braverman & Kaskey*, 68 F.3d 828, 835 (3d Cir. 1995) ("Our federal courts have neither the authority nor the resources to review and approve the settlement of every case brought in the federal court system. There are only certain designated types of suits, for instance consent decrees, class actions, shareholder derivative suits, and compromises of bankruptcy claims where settlement of the suit requires court approval").

When parties execute a settlement agreement in an FLSA action, both contract-formation ingredients are present. All parties assent to the terms of the contract. For consideration, the employer typically agrees to pay a stated sum of money in exchange for the employee's dropping her FLSA suit. And where liability is uncertain and the employer's legal duty to pay a past wage amount is the subject of an "honest dispute," the employer's monetary offer constitutes adequate

---

prevent future wrongs); *see also* Michael T. Morley, *Consent of the Governed or Consent of the Government? The Problems with Consent Decrees in Government-Defendant Cases*, 16 U. Pa. J. Const. L. 637, 657–61 (2014). Ultimately, though, the question whether a district court may enter a consent decree to resolve an FLSA case is for another day, as no party seeks such relief here.

All that said, if a *judgment* is really what the parties are after, they can of course seek a stipulated judgment (which is distinct from a privately negotiated but court-executed consent decree). To enter a stipulated judgment, the parties would agree on the relevant facts (hours worked, rates of pay, etc.), and then the Court would enter a judgment reflecting the legal effects the Court holds must follow from those stipulated facts. But the Court doubts such an option would be a popular resolution for employers because it would (1) require the employer to admit facts from which the Court would predictably adjudicate liability in a public order, and (2) would not allow for any of the risk-based compromise normally present in private settlements. In the settlement agreement here, by contrast, the parties expressly acknowledge that "Defendants in no way admit any violation of law or any liability whatsoever to the Plaintiffs, individually or collectively, all such liability being expressly denied." (Doc. 36-2, #360). That is not the stuff of a stipulated judgment.

consideration. *See id.* § 73 (stating that the performance of a legal duty "which is neither doubtful nor the subject of honest dispute" does not constitute consideration).

So what possible effect could a court's opinion on the agreement's "fairness" or "adequacy" have on the litigants' rights? What "real and substantial controversy" exists? When the parties agree to settle the FLSA claim, no dispute regarding liability under the FLSA is still before the court. And when the parties seek the court's approval of their settlement, neither party disputes that the agreement *is* an agreement (i.e., a contract).

The only possible relevance of the agreement's fairness, then, is its potential bearing on the agreement's enforceability in the event of a later legal challenge. One such challenge could go to the releases that are part of any FLSA settlement. Remember that *O'Neil* and *Gangi*, relying heavily on policy notions of unequal bargaining power, limited the validity of releases of FLSA claims in certain circumstances. *O'Neil*, 324 U.S. at 703, 706–07; *Gangi*, 328 U.S. at 115–16. But they also left open the question of the enforceability of releases over an entire swath of FLSA claims. *Gangi*, 328 U.S. at 114–15 (leaving for another day the enforceability of a release of a claim involving disputed hours worked or rates of pay). And lower courts, invoking those same policy principles, have since conditioned the approval (and implicitly, enforceability) of FLSA settlements on the agreement's fairness. *See Lynn's Food Stores*, 679 F.2d at 1352–53. So from the vantage point of the parties reviewing these cases, a court's opinion on a settlement agreement's fairness seems likely to be a good proxy for its legal enforceability, if that were ever challenged.

But as another district court aptly observed in a recent decision, for a court to resolve that question in the settlement-approval context amounts to an advisory opinion because the parties are asking the court to "*assess **today** whether the settlement agreement will withstand scrutiny if it is challenged later.*" *Walker v. Marathon Petroleum Corp.*, Nos. 2:22-cv-1273, 2:23-cv-782, 2023 WL 4837018, at *6 (W.D. Pa. July 28, 2023). Because the parties to an FLSA settlement no longer dispute liability under the FLSA itself (in the sense that they no longer are actively litigating the question) nor dispute the presence of an agreement, the only context where the enforceability of the releases may be challenged is in an entirely separate, future suit. But the time to resolve that dispute is if and when it arises, not now.

Another context in which disputes about fairness presumably may arise is if other plaintiffs believe that the named plaintiff (or perhaps the plaintiff's counsel, who becomes their counsel as well upon opting in, *see, e.g.,* Doc. 26-1, #288) has improperly rewarded herself (through the incentive award) at the cost of the other plaintiffs. But again, to the extent that a "fairness" determination is intended to ward off such a future breach of fiduciary duty suit, the same problems already noted above arise.

At bottom, in either setting, a court's opinion regarding a settlement's fairness in the context of an underlying FLSA action has *absolutely no legal effect*—it's a prediction and nothing more.[9] Legal predictions about questions not currently before the court are the quintessential advisory opinions that flout Article III.

---

[9] To the extent the parties condition their mutual assent to the underlying settlement on a court's approval so as to extract a fairness opinion from the court—as the parties seem to

2.      **The Equitable Power to Approve Class Action Settlements is Inapplicable to FLSA Settlements**

That an FLSA claim may be maintained as a so-called collective action does not change the conclusion that approvals or rejections of FLSA settlements are advisory opinions. To be sure, federal courts generally possess authority to issue decrees attendant to class action suits, even decrees settling cases without an adjudication of liability. But such authority stems from a historically informed understanding of the "judicial power" that Article III incorporated. From the founding, courts in equity could maintain class action suits involving absent parties. *See West v. Randall*, 29 F. Cas. 718, 722 (C.C.D.R.I. 1820) (No. 17,424) (Story, J.) ("[F]or where the parties are very numerous, and the court perceives, that it will be almost impossible to bring them all before the court … a few may sue for the benefit of the whole …"); *see generally Hansberry v. Lee*, 311 U.S. 32, 41–42 (1940) (collecting English cases from before and around the time of the founding). And where such suits were maintained, those absent parties would be bound by the judgment of the court. *Hansberry*, 311 U.S. at 42–43. But a class action judgment is binding on absent

---

have done here (*see* Settlement, Doc. 36-2, #360)—such a condition still presents Article III problems. Parties cannot consent to a court's subject-matter jurisdiction, *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982), and a federal court still has no authority to opine on legal questions that are not before the court in the context of a dispute between adverse parties. *Muskrat*, 219 U.S. at 361–62. So insofar as parties may claim that a court's approval order might work a legal effect by satisfying a condition precedent to the formation of the settlement contract, Article III still prevents a federal court from entering such an order given the parties currently maintain no adversarial dispute regarding the agreement's enforceability (nor even purport to do so, given they both evince an agreement as to what conditions will consummate the agreement).

parties only if it comports with due process by adequately representing the interests of the absent parties. *Id.*

In the class action context, a court's order or judgment—issued as an exercise of the court's equitable powers—is *necessary* to bind absent class members. *Id.* at 40–41 (noting the general principle that an individual not made party to a suit via service of process is not bound by that suit's judgment and highlighting the class suit as an exception to that principle). Therefore, orders approving class action settlements do in fact affect the current rights of the litigants (and absent class members) and thus typically pose no advisory-opinion problem. However, a federal court's equitable power to approve class action settlements is authorized only for the purpose of protecting the due process rights of absent class members. As between the named class members and defendants, normal contractual principles apply. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010) (holding that a settlement agreement executed by the named plaintiffs and defendant, but not yet court approved on a class-wide basis, still bound the present parties when the defendant moved the court to vacate its order granting preliminary approval of the settlement); *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1094–95 (6th Cir. 2016) (adopting *Ehrheart*). Accordingly, a court's approval of a class action settlement has a legal effect on only absent class members, not present parties. *Whitlock*, 843 F.3d at 1095 ("Rule 23(e) is designed to protect absent class members and other non-parties to the litigation, *not* the defendant[] … [or] a litigating party from a bargain poorly struck.").

But FLSA actions lack the crucial feature which enables district courts to approve settlements under their inherent equitable power: absent class members. *Genesis Healthcare*, 569 U.S. at 75. To the contrary, every plaintiff in the FLSA collective action has affirmatively joined the suit. *Clark v. A&L Homecare & Training Ctr., LLC¸* 68 F.4th 1003, 1009 (6th Cir. 2023). They are all, in essence, named parties. And each one of them has agreed to the settlement.[10] Without any "absentee" plaintiffs (i.e., non-present persons bound by the judgment), an order approving an FLSA settlement still constitutes an advisory opinion. *Cf. Gardiner v. A.H. Robins Co., Inc.*, 747 F.2d 1180, 1188–89 (8th Cir. 1984) (reversing a district court's purported approval of a settlement agreement in a consolidated case involving multiple plaintiffs and rejecting appellee's argument that such approval was proper because the consolidated case was essentially a "quasi-class action").

### 3. An FLSA Settlement Approval Would Not Validly Constitute a Declaratory Judgment

Lastly, a court's approval or rejection of an FLSA settlement cannot be characterized as a permissible declaratory judgment. The Declaratory Judgment Act does not (indeed could not) obviate the need for a current (or at least immediately incipient) dispute about the topic on which a declaration is sought. *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (requiring a controversy involving

---

[10] True, in many cases (as here), in opting in to the collective action, the opt-in parties may have assigned the power to settle to the lead plaintiff in the collective action. But that fiduciary relationship arises by operation of contract, in contrast to a class action where it arises by operation of law. If an opt-in plaintiff concludes that the lead plaintiff, or counsel, violated any fiduciary duties in settling the case, that is best redressed, as noted above (*see* supra n. 7) by an action against one or both of those parties.

"adverse legal interests" of "sufficient immediacy" to warrant a declaratory judgment). And here, while there may be a dispute about the underlying FLSA claim, the parties are presumably *not* in dispute about the enforceability of the agreement that they have negotiated to compromise those claims—they are in agreement after all about the prospect that the compromise should terminate the case. For the same reasons discussed above, where a dispute is lacking, any order is impermissibly advisory.

True, there is one difference between the setting here and a declaratory judgement action on the settlement agreement. Here, the underlying suit itself is on solid jurisdictional grounds, as the FLSA dispute provides the case or controversy needed for Article III jurisdiction. But even then, subject matter jurisdiction under Article III is not dispensed in gross; rather, plaintiffs must establish jurisdiction "for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). So absent an imminent dispute about enforceability, a declaratory judgment claim regarding the settlement agreement will not lie. *See, e.g., Mikel v. Quin*, 58 F.4th 252, 259 (6th Cir. 2023) (observing that "[d]eclaratory judgments are not get-out-of-standing-free cards," and holding that they "may issue only when 'it is substantially likely' to redress a plaintiff's actual or imminent injuries" (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992) (plurality))).

### 4. Policy Concerns Do Not Justify a Federal Court's Ultra Vires Approval or Rejection of an FLSA Settlement

The Court has explained why it has no legal authority to approve or to reject a private FLSA settlement. Nevertheless, the Court would be remiss not to address what seems to be the motivating theme behind the federal courts' unquestioned assertion of authority to exercise approval power: policy concerns. Many courts explicitly state that their approval authority over FLSA settlements stems from the need to protect workers from "coercive" settlements. *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010) ("The court must review settlements because there is a fear that employers would coerce employees into settlement and waiver of their claims." (cleaned up)); *cf. Augustyniak v. Lowe's Home Ctr., LLC*, 102 F. Supp. 3d 479, 487 (W.D.N.Y. 2015) ("Special consideration must be paid to any proposed settlement in order to guard against an employer's possible coercion of a waiver or settlement from employees." (cleaned up)); *Lopez v. Silfex, Inc.*, No. 3:21-cv-61, 2021 WL 5795280, at *3 (S.D. Ohio Dec. 3, 2021) ("[T]he FLSA context counsels in favor of courts approving settlements."). And federal courts need to protect employees—the rationale goes—because low wage workers "lack equal bargaining power; therefore, they are more susceptible to coercion or more likely to accept unreasonable, discounted settlement offers quickly." *Cheeks*, 796 F.3d at 205 (citation omitted).

This rationale is flawed both legally and factually. Legally it relies on a constitutionally flawed premise—that a federal court possesses whatever authority the federal judge thinks necessary or expedient to accomplish the purpose of a

statute. Federal courts do not by default possess broad remedial powers. Rather they possess "only that power authorized by Constitution and statute." *Kokkonen*, 511 U.S. at 377. And policy rationales, no matter how compelling, do not justify a federal court's exercising authority beyond those bounds. *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 150 (2023) ("It is quite mistaken to assume, too, that any interpretation of a law that does more to advance a statute's putative goal must be the law. … No law pursues its purposes at all costs." (cleaned up)); *cf. Gill v. Whitford*, 585 U.S. 48, 64–65 ("[P]laintiffs argued that this Court *can* address the problem of partisan gerrymandering because it *must* … Our power as judges to say what the law is rests not on the default of politically accountable officers, but is instead grounded in and limited by the necessity of resolving, according to legal principles, a plaintiff's particular claim of legal right." (cleaned up)).

The policy rationale is also wrong factually. It assumes that employees will without question accept whatever settlement offer an employer tenders, even if that offer is manifestly against their interests. The Court is not convinced. The litigation incentive structures simply do not support the fear that employees will be coerced into harmful settlements. For starters, each of the plaintiffs is represented by counsel. Moreover, by the very nature of FLSA claims, employees are often on equal footing with their employer for factual discovery purposes. They know their rates of pay, their hours worked, and their job responsibilities. Those facts will often be enough to state a plausible claim that can survive a 12(b)(6) motion to dismiss. Next consider the incentives to go to trial. Assuming the employee plaintiffs are correct as

to the FLSA's legal coverage, the trial becomes a credibility contest, and that often is between one employer and many employees—where the risk is that the weight of the employees' evidence will overwhelm the testimony on behalf of the employer. Moreover, the FLSA contains a fee shifting provision which mitigates the cost of litigation and proceeding to trial. *See* FLSA § 16(b), 29 U.S.C. § 216(b). Indeed, it may be in *the employer's* interest to settle quickly, at least as much as the other way around.

So why do plaintiffs settle FLSA claims? Because not all cases are clear cut. Maybe the parties have engaged in discovery and want to hedge against the risk of the court's legal ruling that the plaintiff is an exempt employee not covered by the FLSA. Or maybe the plaintiff did not adequately record her time worked, and she does not want to risk a jury verdict based solely on credibility. Or perhaps, the plaintiff simply desires to move on with her life, and she is happy with the offered settlement. The list of reasons could go on. But the point is that parties typically settle because it is mutually beneficial to do so.

A court-approval regime increases the cost of entering into such a mutually beneficial agreement. It "slows the resolution of FLSA settlements and, by extension, the payment of wages to plaintiffs, forces lawyers to expend more time and resources on the case (and charge higher fees in turn), and clogs court dockets." *Walker*, 2023 WL 4837018, at *6. And often such costs are wasted on a mere formality, as courts are in a poor position to assess the true fairness of a settlement. A court, unlike the parties, does not have access to all the facts underlying the litigation. Moreover,

28

whatever facts are included in the unopposed motion are not tested by the adversarial process. And without the full factual picture, how can the court possibly determine whether an agreement is "fair"? The court can, at most, say that a settlement agreement *seems* fair based on the factual picture jointly presented by (and therefore slanted in favor of the outcome desired by) the parties. But if the whole point of fairness review is that the parties can't do a good enough job on their own, it is difficult to see how a largely nugatory review would fix that problem.[11]

Policy rationales never justify a federal court exceeding the bounds of its authority. But even if they did, the policy rationales in play here counsel *against* a court-approval regime, not in favor of it.

\*      \*      \*

In sum, Article III prohibits federal courts from rendering advisory opinions which do not "affect the rights of the litigants" before them nor resolve a "real and substantial controversy." *Preiser*, 422 U.S. at 401 (cleaned up). Unlike in class action settlements, a district court's opinion on an FLSA settlement's fairness does not affect the rights of the litigants and is therefore impermissibly advisory. And because parties to an FLSA settlement seek an amicable dismissal of the underlying FLSA

---

[11] The Court does not understand how, and has seen very little explaining how, a federal court's fairness review is both effective and necessary where a plaintiff's representation by counsel is insufficient. If legal counsel, who owes a duty to the plaintiff alone, cannot secure a mutually beneficial settlement, then how can a federal court, armed with less knowledge and owing no duty to the plaintiff, possibly swoop in and save the plaintiff from a purportedly coercive settlement? This theory thinks too little of plaintiffs (and their counsel) and too much of the courts.

action and fail to present the court with any adversarial dispute, declaratory judgment is unavailable.

## CONCLUSION

The Court possesses no authority to approve or to reject an FLSA settlement to which the parties have agreed. So, for the purposes of the motion here, the Court **DENIES** Plaintiffs' Unopposed Motion for Settlement Approval (Doc. 36) on the ground that it lacks authority to grant it. To terminate this case, the parties may file a stipulation of dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). And with respect to the settlement itself, it suffices for the Court to observe that the parties may enter into any contract they wish—this Court currently expresses no opinion on such a contract's enforceability or fairness.

**SO ORDERED.**

May 15, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**